UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

STEVEN ERIC GOULD,

Plaintiff,

v.

VERGARA, et al.,

Defendants.

Case No. 18-cv-05427-HSG

**ORDER GRANTING MOTIONS FOR SUMMARY JUDGMENT**

Re: Dkt. Nos. 26, 39

Plaintiff filed this *pro se* action pursuant to 42 U.S.C. § 1983. The Court found that the amended complaint stated a cognizable Fourth Amendment claim[1] against Correctional Training Facility ("CTF") officers Vergara and A. Luna when it alleged that they took a DNA sample from plaintiff's mouth without plaintiff's consent, without probable cause, and without a warrant or court order, and against Monterey County District Attorney Investigator ("DAI") sheriff T. Rodriguez when it alleged that he was present to enforce the DNA collection. Dkt. No. 15. Now pending before the Court are Defendant Rodriguez's motion for summary judgment (Dkt. No. 26) and Defendants Vergara and Luna's motion for summary judgment (Dkt. No. 39). Plaintiff has filed oppositions to both motions (Dkt. Nos. 31, 41), and defendants have filed replies in support

---

[1] In his pleadings opposing the summary judgment motions, plaintiff also alleges that the DNA collection violated the Fifth Amendment. *See* Dkt. No. 31 at 5, 6, 8, 11, 13, 14; Dkt. No. 37 at 3; Dkt. No. 43 at 3, 5. The amended complaint did not state a cognizable Fifth Amendment claim because forced collection of an inmate's DNA does not violate the Fifth Amendment's prohibition on self-incrimination or the Fifth Amendment's takings clause. *See United States v. Reynard*, 473 F.3d 1008, 1021 (9th Cir. 2007) (compelled extraction of blood for DNA collection does not violate prisoner's Fifth Amendment right against self-incrimination because blood samples and DNA profiles are physical, rather than testimonial); *Boling v. Romer*, 101 F.3d 1336, 1341 (10th Cir. 1996) (takings clause does not provide prisoners with protection against unwanted DNA testing). Defendants correctly focus their motions on the only cognizable claim – the allegation that the DNA collection on March 27, 2018 violated plaintiff's rights under the Fourth Amendment.

of their motions (Dkt. Nos. 32, 42).[2] For the reasons set forth below, the Court GRANTS both summary judgment motions.

## FACTUAL BACKGROUND

The following facts are undisputed unless otherwise noted.[3]

During the relevant time period, plaintiff was incarcerated at CTF pursuant to guilty pleas for felony reckless evading and for felony reckless evading by driving in the opposite direction of traffic (Cal. Vehicle Code §§ 2800.2, 2800.4). Dkt. Nos. 39-3, 39-4. On September 26, 2017, plaintiff signed an Advisement and Waiver of Rights for a Felony Guilty Plea, which included a waiver of his Fourth Amendment rights and an acknowledgement that the Orange County Superior Court would order him to provide a local DNA sample:

> 13. Fourth Amendment wavier: I understand under the Fourth and Fourteenth Amendments to the United States constitution, I have a right to be free from unreasonable searches and seizures. I waive and give up this right, and further agree that for the period during which I am on probation or mandatory supervision I will submit my person and

---

[2] Plaintiff has also filed surreplies in oppositions to both motions. Dkt. Nos. 37, 43. Plaintiff did not obtain the required Court approval prior to filing his surreplies. Pursuant to N.D. Cal. Local Rule 7-3(d), once a reply is filed, no additional memoranda, papers or letters may be filed without prior Court approval, except if new evidence has been submitted in the reply or if a relevant judicial opinion was published after the date the opposition or reply was filed. Here, no new evidence was submitted in the replies, and plaintiff was not submitting notice of a relevant judicial opinion in his surreplies. However, the Court has considered plaintiff's surreplies in deciding the pending summary judgment motions.

[3] Plaintiff argues that the Court must accept as true certain allegations because (1) he set forth these allegations in his CDCR Form 22s, (2) prison officials failed to respond to the Form 22s within the time limits set forth in 15 Cal. Code Regs. § 3086, and (3) prison officials' failure to object to these allegations is deemed an acceptance of facts pursuant to the Uniform Commercial Code ("UCC") 3-410. Dkt. No. 37 at 4-5. These arguments fail. The CDCR Form 22 is not a discovery pleading. Pursuant to Fed. R. Civ. P. 36, the failure to timely respond to a request for admission served within the course of prosecuting an action results in the matter being admitted. Fed. R. Civ. P. 36. However, the failure to respond to, or deny, allegations made in a Form 22 has no evidentiary value or binding effect on parties or the Court in a litigation. In addition, 15 Cal. Code Regs. § 3086; title 15 of the California Code of Regulations; UCC 3-410; and the Uniform Commercial Code do not apply to, or govern, federal civil litigation. Nor do they mandate how prison grievance forms and their responses should be treated for evidentiary purposes.

Plaintiff also claims that the allegations presented in Claim I must be accepted as true because defendants failed to deny that they violated his Fifth Amendment rights. Dkt. No. 31 at 6. 42 U.S.C. § 1997e(g) authorizes defendants to waive the right to reply to any prisoner action and specifies that such a waiver is not an admission of the complaint. Defendants have properly exercised their right under 42 U.S.C.§ 1997e(g) and filed a waiver of reply. Defendants' failure to file an answer is not an admission of the complaint. 42 U.S.C. § 1997e(g). Moreover, as discussed *supra*, plaintiff has not stated a cognizable Fifth Amendment claim. Defendants therefore were not required to defend against such a claim.

2

> property, including any residence, premises, container or vehicle under my control to search and seizure at any time of the day or night by any law enforcement officer, probation officer, post-release community supervision officer, or parole officer with or without a warrant, probable cause or reasonable suspicion.
>
> . . .
>
> 26.(k) I voluntarily agree and understand that the court will: . . . Order me to provide a state DNA sample and prints for the State DNA database pursuant to P.C. 296 and P.C. 296.1.
>
> 26.(l) I voluntarily agree and understand that the court will: . . . Order me to provide a local DNA sample, prints, and photograph to the [Orange County District Attorney] for permanent retention, analyses and search within any law enforcement database(s) for only law enforcement purposes.

Dkt. No. 39-3 at 3-4. Plaintiff initialed item no. 13, the waiver of his Fourth Amendment rights, and item no. 26(k) indicating his consent to these two items, but declined to initial item no. 26(1), indicating that he did not consent to this item. *Id.* Sometime between September 16, 2017, and March 27, 2018, plaintiff provided a DNA sample to Orange County authorities. Dkt. No. 14 at 40.

The following facts regarding the March 27, 2018 DNA collection are undisputed. On that date, CTF Officer Luna collected a DNA sample from plaintiff by swabbing the inside of his left cheek. The purpose of the DNA collection was to obtain a confirmatory buccal swab from plaintiff for a case pending in Las Vegas, Nevada in which plaintiff was a suspect. CTF officer Vergara and Monterey County DAI Rodriguez were present during the collection. There was no court order specifically ordering this DNA collection. The DNA sample was sent to the Las Vegas Metropolitan Police Department.

The parties' accounts differ as to other details of the March 27, 2018 DNA collection.

According to plaintiff, on or about March 27, 2018, Monterey County DAI Rodriguez interviewed plaintiff, with CTF officers Luna and Vergara present. Plaintiff informed defendant Rodriguez that he had already provided a DNA sample and was not required to submit to further DNA collection. Plaintiff asked if the DNA collection was mandatory, and CTF officer Luna stated that it was. Plaintiff responded that he had proof that he complied with the DNA sample requirement and showed defendants his abstract of judgment. Plaintiff was seated at the time, and Defendant Luna "forcefully and unlawfully" collected his DNA by putting a swab in his mouth.

3

1  Plaintiff did not consent to the DNA collection and immediately protested it afterwards by

2  reporting it to another correctional official. Dkt. No. 14 at 4, 19. Plaintiff alleges that DAI

3  Rodriguez was the "ringleader" and "initiator" of the "unlawful taking of the DNA," and that

4  Officers Luna and Vergara acted at his direction. Dkt. No. 37 at 1-2, 6.

   Defendants claim that that plaintiff consented to the DNA collection, and that the DNA

6  was collected without use of force. *See generally* Dkt. No. 39; Dkt. No. 39-5.

## DISCUSSION

### I. Summary Judgment Standard

Summary judgment is proper where the pleadings, discovery and affidavits show there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *See* Fed. R. Civ. P. 56(a) (2014). Material facts are those that may affect the outcome of the case. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute as to a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *See id.*

A court shall grant summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial [,] . . . since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). The moving party bears the initial burden of identifying those portions of the record that demonstrate the absence of a genuine issue of material fact. *Id.* at 323. The burden then shifts to the nonmoving party to "go beyond the pleadings and by [his] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file, 'designate 'specific facts showing that there is a genuine issue for trial.'" *See id.* at 324 (citing Fed. R. Civ. P. 56(e)). The nonmoving party must show more than "the mere existence of a scintilla of evidence." *In re Oracle Corp Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010) (citing *Liberty Lobby*, 477 U.S. at 252). "In fact, the non-moving party must come forth with evidence from which a jury could reasonably render a verdict in the non-moving party's

4

favor." *Id.* (citing *Liberty Lobby*, 477 U.S. at 252). If the nonmoving party fails to make this showing, "the moving party is entitled to judgment as a matter of law." *Celotex Corp*, 477 U.S. at 323.

For purposes of summary judgment, the court must view the evidence in the light most favorable to the nonmoving party; if the evidence produced by the moving party conflicts with evidence produced by the nonmoving party, the court must assume the truth of the evidence submitted by the nonmoving party. *See Leslie v. Grupo ICA*, 198 F.3d 1152, 1158 (9th Cir. 1999). The court's function on a summary judgment motion is not to make credibility determinations or weigh conflicting evidence with respect to a disputed material fact. *See T.W. Elec. Serv., Inc., v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

## II. Defendants Luna and Vergara's Summary Judgment Motion

Defendants Luna and Vergara argue that they are entitled to summary judgment because, pursuant to the governing Ninth Circuit and Supreme Court caselaw, collecting DNA from plaintiff while he was incarcerated for the purpose of confirming his identity was reasonable within the meaning of the Fourth Amendment and, in the alternative, they are entitled to qualified immunity. Dkt. No. 39. Specifically, defendants Luna and Vergara argue that the Ninth Circuit has held that the collection of DNA from convicted felons for identification purposes is reasonable and has upheld Cal. Penal Code § 296, which mandates that all convicted felons provide a DNA sample for identification purposes. Dkt. No. 39 at 4-5 (citing *Hamilton v. Brown*, 630 F.3d 889, 896 (9th Cir. 2011)). Defendants Luna and Vergara also argue that they reasonably understood their conduct to be lawful because plaintiff initialed the portion of the Advisement and Waiver of Rights for a Felony Guilty Plea waiving his Fourth Amendment rights and because collection of a DNA sample by buccal swab is mandated by California law.

Plaintiff argues that defendants violated the Fourth Amendment by "assisting an unauthorized outside agency, specifically the Las Vegas Metropolitan Police Department" in collecting his DNA without his consent, probable cause, a warrant, or a court order. Dkt. No. 41 at 3. Plaintiff states that he never consented to have his DNA taken or to have his DNA shared with other entities, such as the Las Vegas Metropolitan Police Department and the United States

5

Post Office. Dkt. No. 41 at 3-4. He denies that his plea agreement authorized the DNA collection, stating that the Fourth Amendment waiver in his plea agreement applies only to a period of probation or mandatory supervision, neither of which applied on March 27, 2018, and that he crossed out and refused to sign the portion of the plea bargain regarding providing a DNA sample for the local Orange County District Attorney DNA database. He also argues in the alternative that his plea agreement is unlawful, noting that he is challenging his plea agreement in Case No. 18-cv-01821-JGB-JC (C.D. Cal.). Dkt No. 41 at 8.[4]

Viewing the evidence in the light most favorable to plaintiff, the Court presumes that plaintiff had previously provided his DNA, that this initial DNA sample was available to correctional officials to send to the Las Vegas Police Department, that plaintiff did not consent to giving a second DNA sample, that the second DNA sample collected on March 27, 2018 was for the purpose of confirming plaintiff's identity with respect to crimes for which he was charged in Las Vegas, and that the second DNA sample was sent to the Las Vegas Police Department.

Fourth Amendment jurisprudence is clear that a prisoner's DNA may be collected without his consent, probable cause, a court order, or a warrant for purposes of criminal identification, which includes both confirming the prisoner's identity and determining whether the prisoner has committed other crimes. *See Maryland v. King*, 569 U.S. 435, 443-44, 447-56, 461-62 (2013) (discussing Maryland's DNA collection statute); *Hamilton v. Brown*, 630 F.3d 889, 895 (9th Cir. 2013) (discussing Cal. Penal Code § 299.5). The DNA collection statutes found constitutional in *Maryland* and *Hamilton* specify that determining whether the prisoner is the person who committed another crime is an appropriate use of the DNA samples, and that the DNA samples may be shared with outside law enforcement agencies for this purpose. *See* MD Public Safety § 2-505(a)(2) ("DNA samples shall be collected and tested . . . as part of an official investigation into a crime"); MD Public Safety § 2-508(a)(1) (allowing for DNA samples to be shared with federal,

---

[4] Plaintiff also argues that his Security Agreement (Dkt. No. 22-1 at 2-7) and Hold Harmless Agreement (Dkt. No. 22-1 at 8-9) somehow render the DNA collection invalid or unconstitutional. Dkt. No. 41 at 12-13. Both the Security Agreement or Hold Harmless Agreement appear to be contracts between plaintiff and himself. *See generally* ECF No. 22. In any event, neither agreement has any binding force on defendants (or has any relevance to the issues in the case).

State or local law enforcement agencies); Cal. Penal Code § 295 (intent of California's DNA Act is to "assist federal, state, and local criminal justice and law enforcement agencies within and outside California in the expeditious and accurate detection and prosecution of individuals responsible for sex offenses and other crimes"); Cal. Penal Code § 299.6 (allowing for DNA samples to be shared with federal, state or local law enforcement agencies). The Supreme Court specifically found in *Maryland* that using DNA samples to identify whether the arrestee had committed other crimes was reasonable under the Fourth Amendment because there is a legitimate government interest in knowing an arrestee's criminal history so that prison officials can properly process an arrestee for detention and determine whether he is wanted elsewhere. *Maryland*, 569 U.S. at 449-56, 460. Similarly, the Ninth Circuit specifically found in *Hamilton* that the collection of identifying information under California's DNA Act, and the use of such information for purposes including criminal identification, are not precluded by the Fourth Amendment. 630 F.3d at 894.

It is therefore clear that under many circumstances law enforcement's collection and sharing of DNA from a prisoner, including where the purpose of these acts is to determine whether the prisoner committed other crimes, does not violate the Fourth Amendment as a matter of law. The wrinkle presented here is whether it is constitutional for an individual correctional officer to take a DNA sample from an inmate to share with an out-of-state law enforcement agency for investigative purposes, when the inmate has previously provided a centrally-maintained DNA sample that could be used in that manner. The Court declines to conclusively answer this question, because it finds that defendants Luna and Vergara are entitled to qualified immunity with respect to their March 27, 2018 DNA collection.

Qualified immunity is an entitlement, provided to government officials in the exercise of their duties, not to stand trial or face the other burdens of litigation. *Saucier v. Katz*, 533 U.S. 194, 200 (2001). The doctrine of qualified immunity attempts to balance two important and sometimes competing interests—"the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (internal

7

quotation marks and citation omitted). The doctrine thus intends to take into account the real-world demands on officials in order to allow them to act "'swiftly and firmly'" in situations where the rules governing their actions are often "'voluminous, ambiguous, and contradictory.'" *Mueller v. Auker*, 576 F.3d 979, 993 (9th Cir. 2009) (citing *Davis v. Scherer*, 468 U.S. 183, 196 (1984)). "The purpose of this doctrine is to recognize that holding officials liable for reasonable mistakes might unnecessarily paralyze their ability to make difficult decisions in challenging situations, thus disrupting the effective performance of their public duties." *Id.*

To determine whether an officer is entitled to qualified immunity, the Court must consider whether (1) the officer's conduct violated a constitutional right, and (2) that right was clearly established at the time of the incident. *Pearson*, 555 U.S. at 232. Courts are not required to address the two qualified immunity issues in any particular order, and instead may "exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Id.* at 236.

With respect to the second prong of the qualified immunity analysis, the Supreme Court has recently held that "[a]n officer cannot be said to have violated a clearly established right unless the right's contours were sufficiently definite that any reasonable official in his shoes would have understood that he was violating it, meaning that existing precedent . . . placed the statutory or constitutional question beyond debate." *City & Cty. of San Francisco, Calif. v. Sheehan*, 135 S. Ct. 1765, 1774 (2015) (citation and internal quotation marks omitted). This is an "exacting standard" which "gives government officials breathing room to make reasonable but mistaken judgments by protecting all but the plainly incompetent or those who knowingly violate the law." Id. (citation and internal quotation marks omitted). In conducting this analysis, the Court must determine whether the pre-existing law provided defendants with "fair notice" that their conduct was unlawful. *Id.* at 1777.

"[A] right is clearly established only if its contours are sufficiently clear that 'a reasonable official would understand that what he is doing violates that right.' In other words, 'existing precedent must have placed the statutory or constitutional question beyond debate.'" *Carroll v. Carman*, 574 U.S. 13, 16 (2014) (citations omitted). The inquiry of whether a constitutional right

8

was clearly established must be undertaken in light of the "specific context" of the case, not as a broad general proposition. *Saucier*, 533 U.S. at 202. The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted. *Id.*; *see, e.g., Pearson*, 555 U.S. at 243-45 (concluding that officers were entitled to qualified immunity because their conduct was not clearly established as unconstitutional as the "consent-once-removed" doctrine, upon which the officers relied, had been generally accepted by the lower courts even though not yet ruled upon by their own federal circuit).

The Court finds that defendants Luna and Vergara are entitled to qualified immunity because, at the time they collected plaintiff's DNA, there was no clearly established law that established "beyond debate" that the conduct alleged (accepting plaintiff's allegations as true) violated the Constitution. *See Tolan v. Cotton*, 572 U.S. 650, 656 (2014) ("under either prong [of the qualified immunity analysis], courts may not resolve genuine disputes of fact in favor of the party seeking summary judgment"). The crux of plaintiff's argument is that the collection of his DNA for the use of a third-party law enforcement agency without his consent, probable cause, a warrant, or a court order is a *per* se unreasonable search, especially where he has already provided a DNA sample. Plaintiff has not cited any case, and the Court is not aware of any, that holds that an inmate's DNA cannot be collected without his consent, probable cause, a warrant, or court order for the purposes at issue here, or that holds that a second collection of an inmate's DNA cannot occur without the inmate's consent, probable cause, a warrant, or a court order. Rather, Supreme Court Fourth Amendment jurisprudence has specifically held that DNA collection from persons under police supervision without the person's consent, probable cause, or a court order is not a *per se* unreasonable search within the meaning of the Fourth Amendment because individuals taken into police custody are subject to a diminished expectation of privacy; DNA collection by buccal swab is a minimal intrusion; and the parolees' privacy interests are outweighed by government interests in *inter alia* determining whether the parolees had been found guilty of other crimes.

In *Maryland*, the Supreme Court applied these principles to Maryland's requirement that

9

individuals arrested for a crime of violence or burglary, or an attempt to commit these crimes, provide a DNA sample. Neither the individual's consent nor a court order, warrant, or probable cause was required: the individual's arrest triggered the DNA collection requirement. *Maryland*, 569 U.S. at 443-44, 447-48. The Supreme Court held that using a swab on the inner tissues of a person's cheek to obtain DNA samples is a search under the Fourth Amendment, but that it was a reasonable search within the meaning of that amendment because there is a legitimate government interest in processing and identifying the persons arrested in a safe and accurate way; the intrusion of a cheek swab to obtain a DNA sample is minimal; and the privacy expectations of an individual taken into police custody "'necessarily [are] of a diminished scope.'" *Id.* at 450-54, 447-56, 461-62 (citing *Bell v. Wolfish*, 441 U.S. 520, 557 (1979)). In addition, the *Maryland* court included the parolee's criminal history in the definition of "identifying information," noting that the use of fingerprint databases which make a computerized comparison of an arrestee's fingerprints against electronic databases of known criminals and unsolved crimes has been recognized as a reasonable search within the meaning of the Fourth Amendment, and that "the only difference between DNA analysis and the accepted use of fingerprint databases is the unparalleled accuracy DNA provides." *Id.* at 450–51. *Maryland* does not limit states to a one-time collection of the arrestee's DNA. Pursuant to *Maryland*, defendants Luna and Vergara could at least plausibly believe that it was lawful to collect plaintiff's DNA to determine whether plaintiff was the individual who committed the crimes in Las Vegas, even though a DNA sample had previously been collected from plaintiff and presumably was available to them under the procedures set out in California's statute.

It is unclear whether a court may consider binding circuit precedent in determining clearly established law. The Ninth Circuit has defined "clearly established law" as Supreme Court and circuit precedent. *See Community House, Inc. v. Bieter*, 623 F.3d 945, 967 (9th Cir. 2010) ("To determine whether a right was clearly established, a court turns to Supreme Court and Ninth Circuit law existing at the time of the alleged act.") (citing *Osolinski v. Kane*, 92 F.3d 934, 936 (9th Cir. 1996)); *Boyd v. Benton Cnty.*, 374 F.3d 773, 781 (9th Cir. 2004) (same). In *Hope v. Pelzer*, 536 U.S. 730 (2002), the Supreme Court relied on circuit precedent in finding that the defendants were entitled to qualified immunity, specifically that the defendants' conduct violated

clearly established law in light of binding circuit precedent. *Hope*, 536 U.S. at 741–45 ("in light of binding Eleventh Circuit precedent, an Alabama Department of Corrections (ADOC) regulation, and a DOJ report informing the ADOC of the constitutional infirmity in its use of the hitching post, we readily conclude that the respondents' conduct violated "clearly established statutory or constitutional rights of which a reasonable person would have known.") (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). In recent cases, the Supreme Court has assumed for the sake of argument, without explicitly holding, that "controlling Court of Appeals' authority could be a dispositive source of clearly established law," *Reichle v. Howards*, 566 U.S. 658, 665-66 (2012); *see also Carroll v. Carman*, 574 U.S. 13, 17 (2014). Neither case overruled *Hope* or called its exclusive reliance on circuit precedent into question.

Regardless, circuit precedent also fails to establish that the conduct alleged here violated clearly established law. The Ninth Circuit has repeatedly held that prisoners have diminished expectations of privacy, and that the forced collection of DNA from convicted felons without consent, a warrant, or probable cause, does not violate the Fourth Amendment. As early as 1995, the Ninth Circuit held that an Oregon statute requiring certain prisoners to provide blood samples to a DNA data bank was not unreasonable within the meaning of the Fourth Amendment because felons have reduced expectations of privacy, blood extractions constitute a "relatively minimal intrusion into these persons' privacy interests," and there is a legitimate public interest in establishing a DNA bank to prevent recidivism and identify and prosecute murderers and sexual offenders. *Rise v. Oregon*, 59 F.3d 1556, 1559-63 (9th Cir. 1995), *overruled on other grounds by Ferguson v. City of Charleston*, 532 U.S. 67 (2001).

A decade later, the Ninth Circuit continued to find that similar laws requiring DNA samples from prisoners or parolees satisfied the reasonableness requirement of the Fourth Amendment. In *United States v. Kincade*, 379 F.3d 813 (9th Cir. 2004), the Ninth Circuit applied a totality of circumstances analysis and found that the requirement under the DNA Analysis Backlog Elimination Act of 2000 that certain federal offenders on parole, probation, or supervised release submit to compulsory DNA profiling was reasonable and did not violate the Fourth Amendment, even where there was no individualized suspicion that they had committed additional

11

crimes. 379 F.3d at 833-40. In *United States v. Hugs*, 384 F.3d 762 (9th Cir. 2004), the Ninth Circuit held that a condition of supervised release requiring certain felons to provide a DNA sample via blood collection pursuant to the procedures set forth in the DNA Act, 42 U.S.C. § 14135a, did not violate the Fourth Amendment's right to privacy. 384 F.3d at 769. In *United States v. Kriesel*, 508 F.3d 941 (9th Cir. 2007), the Ninth Circuit applied the totality of the circumstances test and found that the 2004 amendment of the federal DNA Act, which required all persons convicted of felonies to submit to DNA collection, did not violate the Fourth Amendment as applied to the plaintiff, a parolee. 508 F.3d at 946-49. The *Kriesel* court found that as a supervised releasee (parolee), the plaintiff had "a diminished expectation of privacy in his own identity specifically, and tracking [a convicted felon's] identity is the primary consequence of DNA collection." *Id.* at 948. The court further noted that the legitimate concerns that DNA samples might be used other than for identification purposes were mitigated by the federal DNA Act's privacy protections, and found that the intrusion caused by a blood test was "not significant" given the commonplace nature of blood tests. *Id.* at 948.

More recently, the Ninth Circuit found in *Hamilton* that California's DNA and Forensic Identification Data Base and Data Bank Act ("California DNA Act"), which requires convicted felons on supervised release to provide blood samples for DNA identification and allows for these DNA samples to be shared with outside law enforcement agencies, did not violate the Fourth Amendment. The Ninth Circuit adopted the reasoning set forth by the plurality in *United States v. Kincade*, 379 F.3d 813 (9th Cir. 2004), and found that the California DNA Act did not violate the Fourth Amendment for the following reasons. First, the California DNA Act is limited to the collection of identifying information. Second, the privacy intrusion resulting from DNA identification is small because it only establishes a record of the defendant's identity. Third, a prisoner can claim no right of privacy once convicted and arrested because the prisoner's identity has become a matter of state interest. Finally, there are compelling state interests in obtaining DNA identification from individuals on supervised release, such as "(1) ensuring compliance with the conditions of supervised release (by making it more likely that violations will be detected); (2) deterrence (by alerting the supervised releasee that the government will be able to identify him if

12

he re-offends); (3) 'contributing to the solution of past crime' to 'help[ ] bring closure to countless victims of crime who have languished in the knowledge that perpetrators remain at large.'" *Hamilton*, 630 F.3d at 894-96 (citing *Kincade*, 379 F.3d at 838-39).

And in *Haskell v. Harris*, 745 F.3d 1269 (9th Cir. 2014), the Ninth Circuit held that *Maryland* compelled a finding that the California DNA Act's application to anyone arrested for, or charged with, a felony offense, was constitutional, both facially and as-applied. *Haskell*, 745 F.3d at 1271.

None of these Ninth Circuit cases address whether a DNA sample may be collected more than once.

Plaintiff argues that *Liston v. County of Riverside*, 120 F.3d 965 (9th Cir. 1996), and *United States v. Kerr*, 817 F.2d 1384, 1386 (9th Cir. 1987) "prove" that defendants' collection of his DNA was "an obvious instance of constitutional misconduct." Dkt. No. 37 at 7-8. Neither case addresses the circumstance present here: the second collection of DNA from a prisoner for law enforcement purposes. *Liston* found that there was a Fourth Amendment violation where there was judicial deception in the search warrant affidavit, and *Kerr* dealt with an automobile stop. The Supreme Court has cautioned lower courts against defining clearly established law at a high level of generality:

> "'We have repeatedly told courts . . . not to define clearly established law at a high level of generality." *Ashcroft v. al–Kidd*, 563 U.S. 731, 742. The dispositive question is "whether the violative nature of *particular* conduct is clearly established." *Ibid.* (emphasis added). This inquiry "'must be undertaken in light of the specific context of the case, not as a broad general proposition.'" *Brosseau v. Haugen*, 543 U.S. 194, 198, 125 S.Ct. 596, 160 L.Ed.2d 583 (2004) (per curiam ) (quoting *Saucier v. Katz*, 533 U.S. 194, 201, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001)). Such specificity is especially important in the Fourth Amendment context, where the Court has recognized that "[i]t is sometimes difficult for an officer to determine how the relevant legal doctrine, here excessive force, will apply to the factual situation the officer confronts." 533 U.S., at 205, 121 S.Ct. 2151.

*Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015). It follows that neither case is relevant to the qualified immunity analysis here, because neither case addresses whether the particular conduct alleged violated the Constitution.

Accordingly, the Court finds that defendants Luna and Vergara are entitled to qualified immunity for their alleged conduct and GRANTS summary judgment in their favor.

13

### IV. Defendant Rodriguez's Summary Judgment Motion

Defendant Rodriguez argues that he is entitled to summary judgment for the following reasons.

First, defendant Rodriguez argues that he is entitled to qualified immunity because there is no clearly established law which prohibits a district attorney investigator from being present during the collection of an inmate's DNA. In response, plaintiff argues that defendant Rodriguez is an expert in the law because he is an investigator for the Monterey County District Attorney's Office and therefore knew that his conduct was illegal and unconstitutional; and that all defendants knew that their conduct was unconstitutional because they were presented with evidence that plaintiff's DNA had already been collected. Dkt. No. 31 at 12-13; Dkt. No. 37 at 6-10.

Second, defendant Rodriguez argues that he did not personally participate in the collection of plaintiff's DNA, as the DNA was collected by defendant Luna. *See* Dkt. Nos. 26, 32. Plaintiff argues that defendant Rodriguez is liable under Section 1983 because defendants Luna and Vergara collected plaintiff's DNA pursuant to defendant Rodriguez's orders. *See* Dkt. No. 31 at 5. Plaintiff also argues that his DNA cannot be collected without his consent, a warrant, or a court order, and that his DNA cannot be shared with agencies outside of the state of California or with employees of the United States Postal Service.[5] *See id.* at 13. Defendant Rodriguez argues that plaintiff's conclusory allegation that he directed the DNA collection is insufficient at summary judgment to establish his casual connection in the allegedly unconstitutional DNA collection.

The Court agrees that plaintiff has failed to present evidence from which it could be reasonably inferred that defendant Rodriguez directed the DNA collection, or is otherwise liable under Section 1983 for the DNA collection. Plaintiff's only evidence supporting defendant Rodriguez's liability for the DNA collection is his conclusory allegation that defendant Rodriguez

---

[5] Plaintiff also argues that that he has "freeborn rights as a sovereign" and that the DNA collection deprived him of his "rights as a sovereign living man." Dkt. No. 31 at 13. A sovereign is a "person, body, or state vested with independent and supreme authority." *See* Black's Law Dictionary (11th ed. 2019). Plaintiff appears to be arguing that the collection of his DNA and the sharing of his DNA with third parties without his consent were illegal because he has independent and supreme authority over himself. But as discussed *supra*, under many circumstances, DNA collection from prisoners is constitutional and legal even if the individual has not consented, and there is neither probable cause nor a court order authorizing the collection.

14

was the ringleader and directed defendants Luna and Vergara to collect the DNA. However, it is undisputed that all the actions regarding the DNA collection were taken by defendant Luna. Defendant Luna informed plaintiff that a buccal swab needed to be taken, took the buccal swab, and then mailed the sample to the Las Vegas Metropolitan Police Department. There are no factual allegations regarding defendant Rodriguez's involvement in the buccal swab collection other than his witnessing the collection and interviewing plaintiff afterwards.

Moreover, even assuming defendant Rodriguez directed the DNA collection or is otherwise liable for the DNA collection, he is entitled to qualified immunity for the same reasons that defendants Luna and Vergara are entitled to qualified immunity. As discussed *supra*, as of March 27, 2018, there was no clearly established law that established "beyond debate" that the collection of an inmate's DNA for law enforcement purposes without the inmate's consent, probable cause, a warrant, or a court order, where a DNA sample had already been taken and presumably was available to correctional officials and law enforcement, was a *per* se unreasonable search. Both the governing Supreme Court Fourth Amendment jurisprudence and Ninth Circuit Fourth Amendment jurisprudence at the time specifically authorized DNA collection from persons under government supervision without the person's consent, probable cause, or a court order. It follows that even if the conduct alleged here violated the Constitution (which the Court does not decide), it would not have been clear to any reasonable officer based on clearly established law that the conduct was unlawful.

Accordingly, the Court GRANTS summary judgment in favor of Defendant Rodriguez.

//
//
//
//
//
//
//

15

**CONCLUSION**

For the foregoing reasons, the Court GRANTS Defendant Luna and Vergara's motion for summary judgment (Dkt. No. 39) and GRANTS Defendant Rodriguez's motion for summary judgment (Dkt. No. 26). The Clerk shall enter judgment in favor of defendants and close the file.

This order terminates Dkt. Nos. 26 and 39.

**IT IS SO ORDERED.**

Dated: 2/3/2020

HAYWOOD S. GILLIAM, JR.
United States District Judge